(C.D. 2498)

HENSEL, BRUCKMANN & LORBACHER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided on rehearing [not published] December 15, 1964)

*John D. Rode* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: The merchandise involved in this protest is described on the invoice as "VULKOLLAN POLYESTER ISOCYANATE STRIPS." The imported material was classified under paragraph 28(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as a coal-tar synthetic resin or resin-like product, and assessed with duty at the rate of 22½ per centum ad valorem, plus 3½ cents per pound. The importer claims the material properly classifiable by reason of the similitude clause in paragraph 1559(a), as amended under paragraph 1537(b) of the act, as modified by the Japanese Protocol to the General Agree-

ment on Tariffs and Trade, T.D. 53865, and T.D. 53877, at the rate applicable to manufactures of rubber, other, and dutiable at the rate of 12½ per centum ad valorem.

Paragraph 28 (a), as modified, *supra*, reads as follows:

Synthetic phenolic resin and all resin-like products prepared from phenol, cresol, phthalic anhydride, coumarone, indene, or from any other article or material provided for in paragraph 27 or 1651, Tariff Act of 1930, all these products whether in a solid, semisolid, or liquid condition, when obtained, derived, or manufactured in whole or in part from any of the products provided for in paragraph 27 or 1651, Tariff Act of 1930_____3½¢ per lb. and 22½% ad val.

Paragraph 1537 (b), as modified, *supra*, insofar as applicable to this case, reads as follows:

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for * * *:

| * | * | * | * | * | * | * |

Other _____ 12½% ad val.

Paragraph 1559 (a), as amended, the similitude clause, provides as follows:

Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; * * *.

The only question for determination here is whether or not the Vulkollan strips here involved, which are conceded to have been made from a synthetic resin or resin-like product, are properly classifiable under paragraph 28 (a), *supra*, as coal-tar synthetic resin or resin-like products, or whether the imported strips before exportation had been processed into finished material dedicated to use as squeegee blades, in which case the imported Vulkollan strips would no longer be synthetic resin or resin-like products in a solid condition such as is provided for in paragraph 28 (a), *supra*, but would then constitute new articles, advanced beyond that stage, possessing a new name, properties, and use and, as such, dutiable under paragraph 1537 (b), *supra*, as manufactures of "india rubber * * * Other," as claimed.

The only witness called to testify was Mr. Jan Seidner, owner of the importing company. A representative sample of the merchandise was received in evidence as plaintiff's illustrative exhibit 1. The imported material, according to the testimony of plaintiff's witness, was identical in composition to plaintiff's exhibit 1, except that exhibit 1 is 2 inches by three-eighths of an inch, and the imported material came in lengths of approximately 10 meters, that is, about 32½ feet (R. 3).

Plaintiff's witness describing the manner in which the imported merchandise was produced, testified as follows: That three basic coal-

tar products were used, namely, glycol acetic acid is mixed with the butylene glycol and then dehydrated. The resultant product is then reacted with the polyester, and by cross-linkage under vacuum, a semiliquid material is obtained (R. 17). This material is then metered in an exact quantity into a centrifugal mold which mold is then rotated for about 1½ minutes (R. 18). When removed from the mold the material is in the form of a cylinder—a sleeve with two open ends. In composition the material is like exhibit 1. The sleeve or cylinder is about 3 feet long and 18 inches in diameter. The sleeve is next placed on a wooden core and put in an annealing oven to give the material the proper hardness (R. 19). After the annealing process, the sleeve is taken out of the oven, the core is removed and a new core inserted and it is then placed on a turning lathe. As the sleeve rotates on the lathe, a knife cuts it into a long continuous strip, about 10 meters in length. The special knife which cuts the sleeve into a long strip is specially designed so that no nicks or tears occur on the cut surfaces which would make it unusable as a squeegee. The strip is then cleaned or polished, the edges checked for straightness (R. 20) and for the absence of nicks or splinters. In its imported condition, the merchandise has a definite thickness and hardness, a certain finish, the edges are squared and cleaned—all of which characteristics are necessary for its use as a squeegee blade (R. 21).

The testimony of Mr. Seidner, which is not contradicted, establishes to our satisfaction that the imported material, regardless of its length, can be used only for squeegee blades; that is, the material after importation was cut into desired lengths, fitted into holders, and then used to move back and forth across a screen to force ink through the holes in the screen in a printing process. While it is conceded that material of the same identical composition is used for certain other purposes, yet, the end use of the material is fixed at the time it is passed through the mold at the time of its manufacture. Thereafter, it is dedicated to the use for which it is definitely molded and for nothing else (R. 25–26). The material before us was specifically molded for use as squeegee blades and is sold as a squeegee blade or squeegee strips (R. 21). The testimony further establishes that the squeegee blades serve the same purpose as rubber blades previously used in the same process, the imported material being used as a substitute for rubber because of its greater hardness, its resistance against abrasion, and certain other desirable qualities not found in regular rubber.

We are of the opinion that the case of *United States* v. *American Hecolite Denture Corp.*, 21 CCPA 131, T.D. 46465, is applicable in the determination of the issue in this case. In the *Denture Corp.* case, *supra*, the merchandise was described as "hecolith base plates, U-shaped," and was classified under paragraph 31 of the Tariff Act of

1932 as compounds of pyroxylin made into finished or partly finished articles. "The importer protested, claiming the goods to be dutiable * * * under said paragraph as compounds of pyroxylin in blocks, sheets, rods, tubes, or other forms, not made into finished or partly finished articles." The United States Customs Court sustained the protest and the case was reversed on appeal. In its decision, the appellate court stated, page 132:

> The goods imported are identical with those before this court in *United States* v. *Bush & Co.*, 16 Ct. Cust. Appls. 478, T.D. 43222. A full description of the articles, and of their use in making artificial dentures, is found in the case referred to. It will be sufficient, for the purposes of this opinion, to say that the imported articles are made of a pyroxylin preparation known as hecolith, and are U-shaped. One of the official samples is somewhat semicircular in form and shaped for making a plate for an upper set of false teeth. The other class of articles, as shown by the official sample, is also U-shaped in form, but with the center portion cut out, so that the article appears somewhat crescent-shaped, and is especially adapted for use in making a base for a lower set of false teeth. They are polished, have the name and origin of the goods stamped thereon, and are colored to imitate the color of human gums. The evidence shows that they are used as a base upon which to mount false teeth, and in which the teeth are mounted by the process described in *United States* v. *Bush & Co., supra.* * * *
>
> The record discloses that before importation these articles are made by the use of hecolith, which is usually first made in blocks or sheets. A portion of this material is placed in a mold and is compressed under heat until it assumes the form of the imported article. This compression and heat, according to the importer, increases "the chemical and physical combination of the material."

The court further held, page 135, as follows:

> Here, the only question is whether these goods have been advanced beyond the stage of blocks, sheets, rods, tubes, or other forms of hecolith into articles, finished or unfinished. It must be quite obvious that they have; otherwise, there seems to be no reason for taking portions of the raw material, produced in blocks, as the evidence shows, softening the same, and compressing it under heat into the shapes now before us. * * *

The appellate court in the *American Hecolite Denture Corp.* case, *supra*, further upheld the classification of the collector as compounds of pyroxylin made into finished or partly finished articles. See also *United States* v. *Geo. S. Bush & Co., Inc.*, 16 Ct. Cust. Appls. 478, T.D. 43222, cited in the above quotation. The case of *J. B. Henriques, Inc.* v. *United States*, 46 CCPA 54, C.A.D. 695, cited by the plaintiff in its brief, also supports the plaintiff's claim in this case.

On the basis of the record presented in this case, we are of the opinion and hold that the plaintiff has overcome the presumption of correctness attaching to the collector's classification and on its part has shown by satisfactory and competent evidence that the imported material should be classified by similitude under paragraph 1537(b)

of the Tariff Act of 1930, as modified, *supra*, at the rate of 12½ per centum ad valorem as "Manufactures of india rubber * * * Other," as claimed.

The protest is, therefore, sustained. Judgment will issue accordingly.